UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REGINA MARIE TAYLOR,

                      Plaintiff,

           V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                   Defendant.

_____

**REPORT AND
RECOMMENDATION**

12-CV-1326
(GTS/VEB)

## I. INTRODUCTION

In June of 2010, Plaintiff Regina Marie Taylor applied for Supplemental Security

Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been

unable to work since May of 2010 due to physical and psychological impairments. The

Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Legal Services of Central New York,

Christopher Cadin, Esq., of counsel, commenced this action seeking judicial review of the

Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for benefits on June 7, 2010, alleging disability beginning on May 1, 2010. (T at 132).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 9, 2011, in Syracuse, New York, before ALJ Gordon Mahley. (T at 32). Plaintiff appeared with her attorney and testified. (T at 35-66).

On October 13, 2011 ALJ Mahley issued a decision denying Plaintiff's application for benefits. (T at 11-31). The ALJ's decision became the Commissioner's final decision on June 22, 2012, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on August 24, 2012. (Docket No. 1). The Commissioner interposed an Answer on December 17, 2012. (Docket No. 6). Plaintiff filed a supporting Brief on April 1, 2013. (Docket No. 15). The Commissioner filed a Brief in opposition on May 16, 2013. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for further proceedings.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 11).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 7, 2010. (T at 16).  The ALJ found that Plaintiff's degenerative disc disease (status post-fusion), obesity, borderline intellectual functioning, and adjustment disorder (with mixed features) were "severe" impairments. (T at 16-17).  However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 17-18).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift/carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk at least 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, push/pull without limitation, reach without limitation, and occasionally climb, balance, stoop, and crouch. The ALJ also found that Plaintiff could (on a sustained basis) understand, carry out, and

remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 19-24).

The ALJ determined that Plaintiff had no past relevant work. (T at 24). Considering Plaintiff's age (26 years old on the application date), education (limited), work experience (no past relevant work) and RFC (outlined above), the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24-25). As such, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Act, from June 7, 2010 (the application date) through October 13, 2011 (the date of the ALJ's decision). (T at 25-26). As noted above, the ALJ's decision became the Commissioner's final decision on June 22, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of this position. First, she argues that the ALJ's should have found two additional impairments to be severe at step two of the sequential evaluation. Second, Plaintiff contends that the ALJ did not afford proper weight to the opinions of her treating providers. Third, Plaintiff challenges the ALJ's credibility assessment. Fourth, Plaintiff contends that the ALJ erred by relying on the Medical-Vocational Grids at step five of the evaluation. Each argument will be addressed in turn.

### a. Severity

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

The ALJ found that Plaintiff's degenerative disc disease (status post-fusion), obesity, borderline intellectual functioning, and adjustment disorder (with mixed features) were "severe" impairments. (T at 16-17). Plaintiff contends that her left hand impairment and black out spells should also have been considered severe impairments.

In November of 2008, Dr. Srinivasan Mani, a treating physician, noted "mild

weakness of the left arm mainly for dorsiflexion of the left wrist . . . ." (T at 257). Dr. Mani reported that he could not identify "any specific anatomical basis for [the] symptoms and signs." (T at 258). There does not appear to be any other objective evidence of a left hand impairment and no treating provider assessed any functional limitations related to such an impairment. Dr. Kalyani Ganesh, a consultative examiner, found Plaintiff's hand and finger dexterity intact, with grip strength 5/5 bilaterally. (T at 507). As such, the ALJ did not err by finding that this impairment was not severe.

In August of 2009, Noreen Usmail, Plaintiff's substance abuse counselor, reported that Plaintiff complained of "passing out." (T at 406). In December of 2009, Dr. Mani referenced a "history of episodes of 'blackout spells' of an indeterminate nature." (T at 349). In June of 2010, Debra LaFona, Plaintiff's social worker, noted that Plaintiff's "black out spells" seemed to increase with anxiety. (T at 487). However, the ALJ noted that numerous tests (e.g. MRI, MR angiography, and EKG) were unremarkable for any neurological impairments. (T at 17). The record indicated that, as of October 2010, Plaintiff's black out spells had stopped after her medications were adjusted. (T at 565). Plaintiff's treating medical providers did not identify any ongoing functional limitations related to this condition. Accordingly, the ALJ's conclusion that this impairment was non-severe was supported by substantial evidence.

Moreover, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act and continued with the sequential analysis, any arguable errors in the findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he

Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b.    Treating Providers' Opinions

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Plaintiff contends the ALJ improperly discounted several opinions offered by her treating providers. This Court will examine these opinions in turn.

### i.    Dr. Gould

In May of 2009, Dr. Nathaniel Gould, a treating physician, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form (the "May 2009 report"). Dr. Gould opined that Plaintiff could occasionally lift/carry up to 20 pounds; sit/stand/walk for 1 hour at a time without interruption; and sit/stand/walk for 3 hours in an 8-hour work day. (T at 318-19). He found that she was limited to occasional reaching and could never stoop. (T at 320-21). Dr. Gould noted that Plaintiff recently had back surgery and suggested that her symptoms might improve. (T at 323).

In March of 2010, Dr. Gould completed a questionnaire regarding Plaintiff's functional limitations (the "March 2010 report"). Dr. Gould opined that Plaintiff frequently experienced pain sufficiently severe to interfere with attention and concentration. (T at 315). He concluded that Plaintiff could lift/carry 10 pounds occasionally and less than 10 pounds

frequently; sit for up to 6 hours; and stand/walk for up to 2 hours. (T at 315). He found that Plaintiff would be absent from work more than 3 times per month as a result of her impairments or treatment. (T at 316). Dr. Gould reported that Plaintiff would need to lie down at unpredictable intervals during a work shift, (T at 316).

Dr. Gould completed another Medical Source Statement of Ability to Do Work-Related Activities (Physical) form in June of 2011 (the "June 2011 report"). Dr. Gould assessed that Plaintiff could occasionally lift/carry 10 pounds, but could not carry any weight frequently. (T at 640). He found that she was limited to standing/walking for less than 2 hours in an 8-hour workday and sitting for less than 6 hours in an 8-hour workday. (T at 640-41). Dr. Gould opined that Plaintiff could never climb or balance and was limited with regard to reaching. (T at 641-42).

The ALJ gave "limited weight" to Dr. Gould's May 2009 opinion, noting that it was rendered less than two months after Plaintiff's back surgery. (T at 20). The ALJ then opined that there was "no evidence of those limitations lasting for 12 continuous months." (T at 20). This finding cannot be sustained. Dr. Gould's other two opinions (rendered in March of 2010 and June of 2011) certainly constitute "evidence" of limitations lasting for 12 continuous months. The ALJ also substituted his judgment for the treating provider's by characterizing Plaintiff's treatment as "conservative." The ALJ is not permitted to "arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). The ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983));

see Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."); see also See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir.2008)("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen.  The ALJ and the judge may not 'impose[] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'")(quoting Shaw v. Chater, 221 F.3d 126, 134-35(2d Cir.2000)).

The ALJ gave "limited weight" to Dr. Gould's March 2010 report, finding that the opinion was inconsistent with the clinical findings, course of treatment, and other opinions of record.  (T at 21).  The ALJ also noted that Dr. Gould's opinion was based "at least in part" on Plaintiff's subjective reports. (T at 21).  The ALJ's analysis was inadequate. First, there was nothing improper about Dr. Gould basing his opinion, in part, on Plaintiff's subjective complaints.  The Second Circuit has held that a patient's complaints or reports of her history are "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool.").

Second, it was error to discount Dr. Gould's March 2010 report as inconsistent with

the objective medical findings[5] without first re-contacting Dr. Gould. The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

The ALJ also gave "limited weight" to Dr. Gould's June 2011 report, again noting the "limited nature" of Plaintiff's treatment regimen. (T at 21). The ALJ also cited Plaintiff's failure to follow-up with Dr. Rudolph Buckley, her orthopedic surgeon, for recommended further testing as evidence that her limitations were not as severe as Dr. Gould assessed.[6] (T at 21). As outlined above, the decision to characterize the treatment as "conservative"

---

[5]The ALJ found that Dr. Gould's opinion was inconsistent with the "negative clinical findings, treatment regimen, and other opinions of record." (T at 21). For example, MRIs of the lumbar spine showed disc bulging, but it was generally described as "mild" or "very mild." (T at 20). Nevertheless, the condition was serious enough to warrant surgery (L5-S1 transforminal lumbar interbody fusion). (T at 20). In addition, Dr. Gould's assessment was consistent with the limitations noted by Dr. Buckley, Plaintiff's surgeon.

[6]Dr. Buckley conducted a follow-up evaluation on August 18, 2010. He noted that Plaintiff continued to complain of progressive back pain radiating into both legs. (T at 512). Dr. Buckley described Plaintiff as a "candidate for repeat discogram evaluation" to evaluate whether there was "any acute change." (T at 512). There is no evidence that Plaintiff obtained this evaluation, although the ALJ did not address the subject with her during the hearing (thereby depriving Plaintiff of the opportunity to explain).

and discount the treating provider's opinion on that basis (without giving the provider an opportunity to clarify) was error. In addition, as discussed further below, the ALJ also should not have faulted Plaintiff for failing to follow up with Dr. Buckley without asking her for an explanation. See SSR 96-7p.

Lastly, it should be noted that the ALJ appears to have considered each of Dr. Gould's reports separately, without considering the combined effect of the opinions. In other words, the fact that Plaintiff's treating physician reported consistent and significant limitations on three occasions, with progressive deterioration, over a two-year period is strong evidence of disabling impairments. It was error for the ALJ to consider the reports in isolation. A remand should be ordered for further development of the record (including re-contacting Dr. Gould) and reconsideration of his opinions.

### ii.    Dr. Buckley

In October of 2009, Dr. Rudolph Buckley, the treating orthopedic surgeon, completed a musculoskeletal questionnaire. Dr. Buckley qualified his opinion by noting that he had last treated Plaintiff on May 19, 2009 (approximately two months after her lumbar fusion surgery) and was assessing her limitations as of that date. (T at 317). Dr. Buckley opined that Plaintiff could never lift/carry more than 10 pounds, sit for more than 6 hours, and stand/walk for more than 2 hours. (T at 317). He reported that Plaintiff's symptoms or treatment would cause her to be absent from work about twice a month and that her impairments would last at least 12 months. (T at 317).

The ALJ gave Dr. Buckley's opinion "limited" weight, noting that the doctor's assessment was made soon after Plaintiff's surgery and that her follow-up with Dr. Buckley

was limited. (T at 20).  Considered in isolation, the decision to give this opinion limited weight was appropriate, given the limited treating relationship.  However, Dr. Buckley's opinion, combined with the assessments provided by Dr. Gould, collectively undermines the ALJ's RFC determination.  Dr. Buckley's opinion should be included as part of the consideration on remand after further development of the record.

### iii.    Dr. Johri

In April of 2010, Dr. Surendra Kumar Johri, a psychiatrist, completed a mental impairment questionnaire.  He opined that Plaintiff had moderate limitations with respect to understanding, remembering, and carrying out simple instructions; moderate limitations as to maintaining attention and concentration for extended periods; and moderate limitation with respect to her ability to follow a schedule, maintain attendance, and be punctual within customary tolerances. (T at 432).  Dr. Johri determined that Plaintiff was also moderately limited with regard to staying on task without supervision, working in close proximity to others without being distracted, completing a normal workday/workweek without interruptions from psychiatric symptoms, and performing at a consistent pace. (T at 432). He assessed mild limitations as to social interaction and adaptation skills. (T at 433).  He concluded that Plaintiff would likely be absent from work more than three times per month due to her impairments or treatment. (T at 433).

The ALJ gave "little weight" to Dr. Johri's opinion, noting that there was "no evidence of Dr. Johri ever personally evaluating or treating" Plaintiff. (T at 22).  The ALJ should not have accepted the lack of evidence regarding the nature of the treating relationship; he should have sought to develop the record by inquiring as to the basis for Dr. Johri's opinion. As it happened, Plaintiff's counsel provided the Appeals Council with documentation

15

establishing that Dr. Johri supervised Plaintiff's substance abuse counselor and consulted with the counselor regularly. (T at 645). Thus, the ALJ's conclusion that Dr. Johri had no treatment relationship was simply incorrect. With that said, the ALJ's overall assessment of Plaintiff's mental limitations was supported by substantial evidence and his error in failing to develop the record regarding Dr. Johri was harmless.

In July of 2010, Dr. Dennis Noia, a treating psychiatric examiner, reported that Plaintiff was cooperative, with "moderately adequate" social skills. (T at 502). Dr. Noia opined that Plaintiff appeared capable of understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; and regularly attending to a routine and maintaining a schedule. (T at 504). She could learn new tasks and make appropriate decisions. (T at 504). Dr. Noia noted that Plaintiff might have "occasional difficulty" with stress, but could relate to and interact with others "moderately well." (T at 504).

In May of 2011, Dr. Jeanne Shapiro performed another consultative psychiatric examination. Dr. Shapiro found that Plaintiff appeared to be capable of understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; and maintaining attention and concentration for tasks. (T at 591). Dr. Shapiro opined that Plaintiff could attend to a routine and maintain a schedule and concluded that she could learn some new tasks, make some appropriate decisions, related to and interact with others, and deal with some stress. (T at 591).

The ALJ appropriately afforded significant weight to these assessments. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and

416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Further support for the ALJ's determination is found in the assessment of a non-examining State Agency review consultant, who concluded that Plaintiff had mild restriction in her activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (T at 525).

In addition, while the treatment notes from Plaintiff's substance abuse counselor and social worker documented struggles with depression and anxiety, Plaintiff was consistently described as making progress and experiencing an improved mood, with "manageable" anxiety. (T at 395, 399, 402, 404, 406, 412, 414, 484).

Accordingly, the record contains substantial evidence to support the conclusion that Plaintiff retained the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. As such, any error by the ALJ as to this aspect of the decision was harmless.

Plaintiff also argues that the ALJ should have found that her impairments met or medically equaled § 12.05C of the Listings (Intellectual disability). However, that Listing requires evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." Plaintiff has been raising her child since the age of 19 and was able to engage in a variety of activities of daily living, including shopping, light chores, computer use, and pet care. (T at 20). The Listing also

requires a valid verbal, performance, or full scale IQ of 60 through 70, along with another physical or mental impairment imposing an addition and significant work-related limitation of function. Plaintiff's full scale IQ score was 74. (T at 588).  The Social Security Program Operations Manual System ("POMS") categories a 74 IQ score as being in the marginal or "borderline" range.  POMS DI 24515.056 D.1.c. This Court finds no error with respect to this aspect of the ALJ's decision.  However, this may need to be revisited after further development of the record (see discussion in Section III.B.2.d below).

### c.    Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See, e.g., Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v.

Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows:

She graduated from high school, but took special education classes. (T at 37). She suffers from depression, anxiety, migraines, and blackout spells. (T at 39). Severe lower back pain is a constant problem. (T at 40-41). She experiences tingling in her legs. (T at 41). The pain interferes with her ability to concentrate. (T at 41). She has some memory problems. (T at 49). She has difficulty handling objects with her left hand. (T at 50, 56). She cannot lift a gallon of milk and cannot sit for more than 20 minutes. (T at 60-61).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of the symptoms were not entirely credible. (T at 24).

The ALJ's credibility determination was flawed. The ALJ discounted Plaintiff's credibility based, in part, on her failure to follow prescribed treatment (e.g. physical therapy, injections, and discograms). However, the ALJ did not seek out Plaintiff's explanation for these decisions. SSR 96-7p provides that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

Moreover, given Plaintiff's acknowledged psychiatric issues and borderline

intellectual functioning (T at 16), it is possible (if not likely) that a lack of insight and judgment was a material factor in the failure to follow recommended treatment. See Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008)(noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) and citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).

Lastly, Plaintiff's testimony concerning her physical limitations was supported by Dr. Gould's assessments. As discussed above, the ALJ did not adequately consider those assessments or develop the record.

The ALJ's decision to discount Plaintiff's credibility was not supported by substantial evidence and should be revisited on remand after further development of the record.

### d. The Grid

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

The ALJ found that Plaintiff was not disabled pursuant to the framework of Medical-Vocational Rule 201.24. (T at 25). However, that finding was based on the ALJ's conclusion that Plaintiff retained the RFC to perform unskilled sedentary work. The RFC determination was materially affected by the ALJ's decision to discount Dr. Gould's opinions. For the reasons outlined above, the ALJ's evaluations of Dr. Gould's opinions was flawed. The RFC and step five analysis should thus be revisited on remand after reconsideration of Dr. Gould's opinions and further development of the record.

In addition, although this Court has concluded that substantial evidence supported

the ALJ's findings with respect to Plaintiff's mental/emotional impairments, this aspect of the ALJ's decision may also need to be revisited on remand. As noted above, Plaintiff's IQ score was in the borderline range. If her exterional impairments are found, upon further development of the record, to be significantly limiting, this fact, combined with her borderline intellectual functioning, may warrant a finding of functional equivalence under §12.05C of the Listings. *See* POMS DI 24515.056 D.1.c (noting that "slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination").

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

This Court recommends that the Plaintiff be GRANTED judgment on the pleadings,

that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   December 7, 2013
          Syracuse, New York

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge